UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00423-CHL

WILLIAM MAHONEY,                                                    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,[1]                         Defendant.


MEMORANDUM OPINION AND ORDER

Before the Court is the Complaint filed by Plaintiff, William Mahoney ("Mahoney").

Mahoney seeks judicial review of the final decision of the Commissioner of Social Security ("the

Commissioner"). (DN 1.) Mahoney and the Commissioner each filed a Fact and Law Summary.

(DNs 13, 19.) Mahoney also requested and was granted leave to file reply brief, which he has

since done. (DNs 21, 22, 24.) The Parties have consented to the jurisdiction of a Magistrate Judge

to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event

an appeal is filed. (DN 26.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

I.      BACKGROUND

On or about April 26, 2017, Mahoney protectively filed an application for disability

insurance benefits ("DIB") and supplemental security income ("SSI") alleging disability beginning

on July 24, 2016. (R. at 10, 31, 71, 80, 89-90, 92, 105, 117-18.) Mahoney later amended his onset

date to June 18, 2018. (*Id.* at 10, 241-42.) On March 12, 2019, Administrative Law Judge ("ALJ")

Candance A. McDaniel ("the ALJ") conducted a hearing on Mahoney's application. (*Id.* at 28-

---

[1] As Kilolo Kijakazi is now the Acting Commissioner of Social Security in place of Andrew Saul, she is automatically
substituted as the Defendant in this matter pursuant to Fed. R. Civ. P. 25(d). The Court will direct the Clerk to change
the case caption to reflect the substitution.

70.)  In a decision dated June 26, 2019, the ALJ engaged in the five-step sequential evaluation

process promulgated by the Commissioner to determine whether an individual is disabled.  (*Id.* at

7-27.)  In doing so, the ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.  (*Id.* at 12.)

2.  The claimant has not engaged in substantial gainful activity since June 18, 2018, the amended onset date.  (*Id.*)

3.  The claimant has the following severe impairments: sarcoidosis, chronic kidney disease, insulin dependent diabetes mellitus, degenerative disc disease, and morbid obesity.  (*Id.*)

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (*Id.* at 13.)

5.  [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except frequently lift and/or carry 10 pounds and up to 20 pounds occasionally; sit up to 6 hours in an 8-hour span; stand and/or walk up to 6 hours in an 8-hour span; requires an opportunity for a sit-stand option at 30-60 minute intervals taking one to two minutes without leaving the workplace; never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; and occasionally stoop, kneel, crouch and crawl.  (*Id.* at 14.)

6.  The claimant is unable to perform any past relevant work.  (*Id.* at 18.)

7.  The claimant was born on February 11, 1968 and was 50 years old, which is defined as a younger individual age 18-49, on the amended disability onset date. The claimant subsequently changed age category to closely approaching advanced age.  (*Id.*)

8.  The claimant has at least a high school education and is able to communicate in English.  (*Id.*)

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  (*Id.*)

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.* at 19.)

11.     The claimant has not been under a disability, as defined in the Social Security Act, from June 18, 2018, through the date of this decision. (*Id.*)

Mahoney subsequently requested an appeal to the Appeals Council, which denied his request for review on April 28, 2020. (*Id.* 1-6, 202-06.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R.§ 422.210(a) (2020); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Mahoney is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Mahoney timely filed this action on June 12, 2020. (DN 1.).

## II.     DISCUSSION

The Social Security Act authorizes payments of DIB and SSI to persons with disabilities. *See* 42 U.S.C. §§ 404-434, 1381-1383f. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2020).

### A.     Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's

decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B.   Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920 (2020). In summary, the evaluation process proceeds as follows:

(1)   Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2)   Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3)   Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4)   Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909 (2020).

(5)     Does the claimant's RFC, age, education, and work experience allow him
        or her to make an adjustment to other work?  If the answer is "yes," the
        claimant is not disabled.  If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing.  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).  The claimant always retains the burden of proving lack of RFC.  *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.     Mahoney's Contentions

Mahoney alleged the ALJ made a number of errors in Finding No. 5 in relation to her determination of his RFC, which he contended caused additional errors at later steps.[3]  (DN 13.)  In particular, Mahoney alleged that the ALJ failed to properly account for his use of a cane, to develop the record, and failed to consider his work history when assessing his "credibility."  (*Id.*)  The Court will consider each of these arguments separately below.

### 1.     Use of a Cane

Mahoney argued that the ALJ's RFC determination is not supported by substantial evidence because it neither "accounted for his need for an assistive device . . . nor explained why its effect on the RFC was excluded . . . ."  (*Id.* at 3811.)  Mahoney cites SSR 96-9p in support of his argument.  SSR 96-9p, 61 Fed. Reg. 34,478, 34,482 (July 2, 1996).  However, SSR 96-9p only

---

[3] The Court's November 16, 2020, Order required the Plaintiff to "set forth his/her position by an appropriate memorandum of law specifying, inter alia, the numbered findings of the final decision with which exception is taken and the specific errors alleged."  (DN 12, at PageID # 3805.)  Plaintiff's Fact and Law Summary did not specify the numbered findings of the ALJ with which he takes issue.  However, from his arguments, the Court can infer which findings he intended to challenge.  However, counsel is cautioned to carefully comply with all orders from the Court in the future.

applies where a claimant is limited to less than the full range of sedentary work. *Id.* at 34,479. The ALJ determined that Mahoney was limited to less than the full range of light work, not sedentary work. (R. at 14.) Accordingly, the ALJ was not required to undertake the analysis required by SSR 96-9p. *See, e.g.*, *Parrish v. Colvin*, No. 3:13-01218, 2014 WL 4053397, at *10 (M.D. Tenn. Aug. 15, 2014); *Conley v. Colvin*, No. 7:13-cv-121-JMH, 2016 WL 867117, at *5 (E.D. Ky. Mar. 2, 2016). Mahoney conceded as much in his reply brief. (DN 24.)

A review of the ALJ's decision demonstrates that the ALJ did consider the medical evidence related to Mahoney's use of and/or potential need for a cane. In her decision, the ALJ noted at step three in considering whether Mahoney's impairments met the requirements of Listing 1.04 related to spinal disorders that "[t]here is no evidence of requisite nerve root compression, spinal arachnoiditis or lumbar spinal stenosis resulting in inability to ambulate effectively." (R. at 13.) In her determination of Mahoney's RFC, she noted his testimony that his back pain became worse in March 2016 and was exacerbated by both exertion and his weight. (*Id.* at 14.) She cited his testimony that his back pain was ongoing despite his participation in physical therapy and that he reported he could only stand for fifteen minutes and walk two blocks without a cane. (*Id.* at 15.) She found that Mahoney's obesity was likely to exacerbate his back pain but emphasized that despite "imaging studies of the lumbar spine confirm[ing] diffuse idiopathic skeletal hyperostosis developing with multiple level degenerative disc disease and extensive splondylosis, [ ] [Mahoney] maintained adequate sagittal balance and good lordosis" and had "no instability and surgery was not indicated." (*Id.* at 15-16.) She also cited findings of "good range of motion of the hips, knees and ankles, negative straight leg raise and reverse femoral nerve stretch tests, good pedal pulses, no clonus and symmetrical reflexes, and no radiculopathy or focal neurological signs." (*Id.* at 16.) She cited findings that his pain was better was medication and rest and that physical therapy

improved and strengthened his legs despite the fact that "he was subsequently prescribed a cane." (*Id.* at 17.)  She noted that in January 2018, despite pain and decreased spinal range of motion, his cranial nerves were intact and he had "normal strength, sensation and reflexes throughout."  (*Id.*) She cited that in January 2019 he still complained of back pain, but there was no "indication for surgery, no spinal stenosis and no impending neurological problems."  (*Id.*)  She then found that even "with consideration of . . . the prescribed cane, [Mahoney] can still do light work with the opportunity for a sit-stand option at 30-60 minute intervals taking one to two minutes without leaving the workplace, occasionally climb ramps and stairs, and occasionally stoop, kneel, crouch and crawl."  (*Id.*)

Mahoney argued that despite acknowledging that he was prescribed a cane, the ALJ made no "findings as to the extent to which the assistive device is medically necessary or the work-related limitations that result from the need for that device . . . ."  (DN 13-1, at PageID # 3813.) As noted above, since SSR 96-9p does not apply, the ALJ was not required to make the particular findings Mahoney cited, but the Court disagrees that the ALJ failed "to make *any* findings" as Mahoney argued.  (*Id.* at 3814 (emphasis in original).)  In particular, the omission of the cane from her determination of Mahoney's RFC and her citations to the medical findings above make clear that the ALJ rejected that Mahoney's use of a cane limited his ability to perform light work consistent with her determination of his RFC.  Mahoney cited no records to contradict the ALJ's determination other than to cite again to his own testimony regarding his limitations and that a cane was prescribed, both of which were acknowledged by the ALJ in her decision.  (*Compare id.* at 3813-14, *with* R. at 14-15, 17.)  And the mere prescription for a cane alone does not "indicate the frequency with which the cane should be used, its purpose, or its limit upon [a claimant]'s ability to perform light work."  *Marko v. Comm'r of Soc. Sec.*, No. 2:16-CV-12204, 2017 WL

3116246, at *5 (E.D. Mich. July 21, 2017). Even as of the visit where the cane was prescribed, Mahoney reported that his pain was "better with medication and rest and occasional spinal interventions" and his provider found "no upper or lower extremity weakness." (R. at 3590.) His medical records from that visit list as to "[p]roblem: [a]ctivity [i]ntolerance/[i]mpaired [m]obility" a *goal* that "[m]obility/activity is maintained at optimum level for patient," which is described in part as "[a]ssess and monitor patient barriers to mobility and need for assistive/adaptive devices." (*Id.* at 3611.) The prescription for a cane simply states "walking cane." (*Id.* at 3627.) No other information is provided related to the cane or its prescription. Mahoney does not provide any citations to the record supplementing this information or detailing where any medical provider ever indicated when he should use the cane, for what purpose, and how its use limited his ability to work. Without that information, the Court cannot find any error by the ALJ in her analysis. Additionally, as to Mahoney's arguments in his reply that use of a cane belies automatic hand use limitations, he cited to no evidence that use of a cane would take up the use of both hands or authority to support that the same is inconsistent with an individual's ability to perform the requirements of either his RFC as determined by the ALJ or the other demands of light work.

For all these reasons, the Court finds that that ALJ's assessment of Mahoney's use of and need for a cane was supported by substantial evidence and that Mahoney has failed to demonstrate that the ALJ did not follow all applicable agency rules and regulations.

### 2.      Duty to Develop Record

Mahoney argued that the ALJ failed to adequately develop the record. (DN 13-1, at PageID # 3814-19.) It is well-established that an ALJ has a duty to develop the record. *See Lashley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983). Further, an ALJ has a heightened duty to develop the record "when a claimant is without counsel, is not capable of

presenting an effective case, and is unfamiliar with hearing procedures . . . ."[4] *Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003); *see also Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 856 (6th Cir. 1986).  If after reviewing the evidence of record, the ALJ finds it to be insufficient or inconsistent, the ALJ may "determine the best way to resolve the inconsistency or insufficiency."  20 C.F.R. §§ 404.1520b(c), 416.920b(c) (2020).  However, an ALJ is not bound to resolve the inconsistency or insufficiency in a particular manner.  "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary."  *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).

Mahoney argued that the ALJ violated her duty to develop the record by erroneously relying upon her lay interpretation of the raw medical data because no expert opinion discussed his abilities as of his June 18, 2018, amended onset date.  (DN 13-1, at PageID # 3816.)  He argued that "courts in this Circuit have held that there are only rare cases where an RFC not supported by any expert medical opinion would be found to be supported by substantial evidence," citing *Brown v. Colvin*, No. 5:12-cv-00145-LLK, 2013 WL 1703885, at *1 (W.D. Ky. Apr. 19, 2013).  (*Id.*)  However, the Sixth Circuit has rejected this contention.  *See, e.g., Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x. 435, 442-43 (6th Cir. 2017) (rejecting the argument that "the ALJ's RFC lacks substantial evidence because no physician opined that [the claimant] was capable of light work"); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the same argument

---

[4] The ALJ did not have a heightened duty in this case because Mahoney was represented.

because "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence").

Maloney argued additional evidence was necessary because no medical opinion considered the total limiting effects of her impairments with emphasis on her use of a cane.  (DN 13-1, at PageID #3817.)  As the Court above found the ALJ's treatment of his use of a cane supported by substantial evidence, the Court likewise finds that that the use of a cane did not constitute an inconsistency or insufficiency in the record the ALJ had a duty to remedy given the existence of substantial evidence on which to base her decision.

Accordingly, the Court finds that the ALJ did not fail in her duty to develop the record.

### 3.  Work History

Mahoney's final argument is that the ALJ's "credibility" assessment was defective because the ALJ failed to consider his stellar work history.  (DN 13-1, at PageID # 3819- 21.)  Though Mahoney uses the term credibility, as he correctly notes, that term is not used by the regulations. Instead, the regulations note that a claimant's statement that he or she is experiencing pain or other symptoms will not, taken alone, establish that he or she is disabled; there must be medical signs and laboratory findings that show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged.  20 C.F.R. §§ 404.1529(a), 416.929(a) (2020).  If the ALJ finds that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must then assess the intensity and persistence of a claimant's symptoms to determine how those symptoms limit the claimant's capacity for work.  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  In doing so, the ALJ should consider a number of factors including a claimant's daily activities, effectiveness of any medication taken to relieve symptoms, and any side effects of that medication. *Rogers v. Comm'r*

*of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)) ("Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.").  One such factor to consider is a claimant's prior work record.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  However, the regulations only require an ALJ to *consider* the pertinent factors; they do not require the ALJ to discuss all the factors, including a claimant's work history, in his or her opinion.  *See Dutkiewicz v. Comm'r of Soc. Sec.,* 663 F. App'x 430, 433 (6th Cir. 2016) ("The ALJ was not required to explicitly discuss [claimant]'s work history when assessing his credibility . . . .").

Here, the ALJ found that though Mahoney's "impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of th[o]se symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. at 15.)  The ALJ noted that Mahoney's daily activities belied "adaptive functioning far greater than alleged." (*Id.*)  She noted that Mahoney had not always been compliant with his medications and that at least for certain symptoms, when treated, he was at "baseline." (*Id.* at 15-16.)  She emphasized that Mahoney's pain improved with "just conservative care." (*Id.* at 17.)  While the ALJ did not explicitly discuss Mahoney's work history as part of his RFC determination, she did discuss his work history in Finding No. 6, which evidences that she did consider the same, even if she did not explicitly discuss it with regard to her evaluation of Mahoney's symptoms.  Indeed, "[a]lthough required to develop the record fully and

fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel,* 212 F.3d 433, 436 (8th Cir. 2000)); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand.").

As the ALJ's decision evidences consideration of the pertinent factors in her assessment of the intensity and persistence of Mahoney's symptoms, the Court finds her analysis supported by substantial evidence.   Mahoney has failed to demonstrate that the ALJ did not follow any applicable agency rules or regulations in assessing his symptoms and pain.

## III.    ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that the final decision of the Commissioner is **AFFIRMED**.  A final judgment will be entered separately.

IT IS FURTHER ORDERED that pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the Defendant in place of Andrew Saul, and the Clerk is directed to change the case caption to reflect the substitution.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:    Counsel of Record

September 29, 2021